**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TODD J. KLUSMANN, | ) | CASE NO. 5:25-cv-02337 |
| | ) | |
| Plaintiff, | ) | |
| | ) | CARMEN E. HENDERSON |
| v. | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **MEMORANDUM AND ORDER** |
| Defendant, | ) | |
| | ) | |

**I. Introduction**

Todd J. Klusmann  ("Klusmann" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 8).  For the reasons set forth below, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II. Procedural History**

On  July 10, 2023, Klusmann filed applications for DIB and SSI, alleging a disability onset date of January 31, 2023 and claiming he was disabled due to traumatic brain injury-memory/language/cognitive impairment, post traumatic headaches, post traumatic right elbow dysfunction with decreased range of motion/ulnar fracture, post traumatic right wrist dysfunction with decreased range of motion, epilepsy left complex partial die to congenital cavernoma, chronic lower back pain – lumbar generative disc. (ECF No. 6, PageID #: 41, 95–107, 247–53). The

1

applications were denied initially and upon reconsideration, and Klusmann requested a hearing before an administrative law judge ("ALJ").  (ECF No. 6, PageID #: 127, 132). On  November 25, 2024, the ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert ("VE") testified. (ECF No. 6, PageID #: 64–94). On December 18, 2024 the ALJ issued a written decision finding Klusmann was not disabled.  (ECF No. 6, PageID #: 38–57).  The ALJ's decision became final on September 6, 2025, when the Appeals Council declined further review.  (ECF No. 6, PageID #: 25–30).

On  January 27, 2026, Klusmann filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF No. 9, 11, 12). Klusmann asserts the following assignments of error:

(1) The ALJ erred at Step Four by failing to properly consider all medical opinions; and

(2) The ALJ erred at Step Five by finding that other occupations in the national economy were available.

(ECF No. 9, at 1).

### III. Background

#### A.  Relevant Hearing Testimony

At the November 25, 2024, hearing, Klusmann testified that he suffered from a traumatic brain injury causing difficulty with memory, concentration, learning new tasks, speech, and word-finding. (ECF No. 6, PageID #: 48). He testified that he needed prompts and lists to accomplish regular activities and experienced focal seizures three to five times per week. (ECF No. 6, PageID #: 48). Klusmann further testified that he cannot climb or drive because of his seizures and is limited to lifting five pounds or less due to back pain and lightheadedness. (ECF No. 6, PageID #: 48).

2

### B. Relevant Medical Evidence

The ALJ also summarized Klusmann's health records and symptoms:

The claimant has a significant surgical history for injuries of the right upper extremity affecting the wrist, elbow, and shoulder secondary to traumatic injuries related to a mountain biking accident. The claimant's surgical history, mostly prior to the alleged onset date, includes comminuted right radial head open reduction and internal fixation of radial neck on August 27, 2020; right elbow hardware removal, irrigation and debridement, antibiotic spacer placement on October 20, 2020; right elbow irrigation and debridement and removal of antibiotic spacer; radial head arthroplasty and contracture release on December 11, 2020; right wrist arthroscopic with debridement of loose cartilage; triangular fibrocartilage complex repair and owner shortening osteotomy on April 1, 2021; left shoulder glenohumeral debridement subacromial decompression and distal clavicle excision on June 8, 2021, and removal radial head arthroplasty; resection of proximal portion of radius; overhead resection, and distal radial ulnar joint stabilization and membrane stabilization on June 22, 2023.

Cerebral arteriovenous malformation (AVM)/cavernous malformation was an incidental finding at first and it does not appear to be related to the claimant['s] seizures initially, but was later. However, epileptic-type seizures were later said to be under control….Evidence since the alleged onset date reflects seizure activity has been intermittent and has been stable with appropriate therapeutic medication….The claimant was admitted from October 2, 2023 through October 6, 2023 for seizures which resolved with appropriate therapeutic treatment….Active problems were listed as partial symptomatic epilepsy with complex partial seizures, not intractable, without status epilepticus. Psychogenic nonepileptic seizure was also noted.

The claimant first began receiving mental health treatment in November 2023…. Although the claimant reported depression and anxiety, no more than mild to moderate symptoms have been reported during regular follow-up visits and mental status examinations have been within normal limits …. The claimant has never been psychiatrically hospitalized.

(ECF No. 6, PageID #: 48–52).

### C. Opinion Evidence at Issue

On April 24, 2024, occupational therapist Amy Smith, OTR/L, CEAS, CWE, conducted a

Functional Capacity Evaluation ("FCE"). Ms. Smith found Claimant could perform sedentary

exertional level with significant postural limitations. (ECF No. 6, PageID #: 1745). Ms. Smith

opined that Claimant could not lift with the right upper extremity, could only lift seven pounds

with the left upper extremity, suffered from right arm pain and left foot drop, and had "severe"

balance issues limiting him to occasional standing. (*Id.*). On April 29, 2024, Dr. Bradley

Crombie, M.D., signed off on the FCE results. (*Id.* at PageID #: 1746).

**IV.    The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: the claimant has a history
of right wrist/elbow surgeries with degenerative joint disease; cervical
degenerative disc disease; cerebral arteriovenous malformation (AVM)/cavernous
malformation; epilepsy; psychogenic nonepileptic spells (PNES); headache
disorder; depression; anxiety; mild neurocognitive disorder (20 CFR
404.1520(c)).

5. After careful consideration of the entire record, I find that the claimant has the
residual functional capacity to perform light work as defined in 20 CFR
404.1567(b) with the following additional limitations: no climbing of ladders, ropes
or scaffolds and no workaround hazards such as unprotected heights or unguarded,
moving machinery; no commercial driving; occasional crawling and climbing of
ramps and stairs; frequent but not constant reaching and handling with right
(dominant) upper extremity; he is able to understand, remember and carry out
simple instructions and tasks; have occasional interaction with co-workers and
supervisors and no interaction with the public; no production rate work (such as on
an assembly line); and occasional changes in the workplace setting.

10. Considering the claimant's age, education, work experience, and residual
functional capacity, there are jobs that exist in significant numbers in the national
economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security
Act, from January 31, 2023, through the date of this decision (20 CFR
404.1520(g)).

(ECF No.  6, PageID #: 43, 47, 56–57).

4

### V. Law & Analysis

#### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec*, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

#### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404,

Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). The claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C.  Discussion

Klusmann raises two issues on appeal. First, he argues the ALJ's decision is not supported by substantial evidence because the ALJ failed to assess all the medical opinions in the record. (ECF No. 6, PageID #: 1828–29). Second, Claimant argues that the ALJ erred at Step Five by finding that other occupations in the national economy were available under the RFC. (ECF No. 6, PageID #: 1829–32). The Court addresses each issue below.

### 1.  The ALJ Properly Evaluated the Medical Opinion Evidence in the FCE for Supportability and Consistency.

Claimant contends that the ALJ erred at Step Four by failing to properly consider all medical opinions in the record. (ECF No. 6, PageID #: 1828). Specifically, Claimant argues that the ALJ "dismissed the FCE findings because Mrs. Smith was not an acceptable medical source," and "failed to recognize Dr. Crombie's adoption of the FCE test" under *Hargett v. Comm'r of Soc. Sec.,* 964 F.3d 546 (6th Cir. 2020). (ECF No.  6, PageID #: 1828). The Commissioner responds that the ALJ properly evaluated the FCE with the supportability and consistency factors required by 20 C.F.R. § 404.1520c and that any failure to acknowledge Dr. Crombie's co-signature was

harmless. (ECF No. 11, at 4–6). This Court agrees with the Commissioner.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). For claims filed after March 27, 2017, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Still, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c).

"Under Social Security regulations, an ALJ weighing medical opinions must consider two factors: supportability and consistency. The supportability analysis examines 'the extent to which the objective medical evidence and supporting explanations presented by a medical source…support his…medical opinion(s).' The consistency analysis looks at how consistent a medical opinion is with evidence from other sources." *Woodard v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 159761, at *5 (N.D. Ohio Sep. 11, 2023). The Court reviews the ALJ's determination as a whole. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir. 2020*); Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016). This regulation also identifies other factors relevant to weighing a medical opinion, but supportability and consistency are the most important, and the regulations require the ALJ to explain only his consideration of these two factors. 20 C.F.R. §§ 404.1520c(c), 404.1520c(b)(2). Critically, "[i]f the ALJ discusses both of those factors, and her discussion is supported by substantial evidence, the Court may not disturb her findings." *Paradinovich v. Comm'r of Soc. Sec. Admin.*, 2021 WL 5994043, at *7 (N.D. Ohio Sept. 28, 2021), *report and recommendation adopted*, 2021 WL 5119354 (N.D. Ohio Nov. 4, 2021).

7

### a. Supportability

The ALJ properly addressed the FCE's supportability by examining whether the FCE rested on objective medical evidence. The supportability factor requires the ALJ to consider the extent to which the objective medical evidence and supporting explanations presented by the medical source support that source's medical opinion. *See* 20 C.F.R. § 404.1520c(c)(1). An ALJ satisfies this factor by "explicitly discuss[ing] the lack of objective medical records and explanations that [the source] considered in forming his opinion." *Solomon v. Comm'r of Soc. Sec.*, 2026 WL 1336228, at *10 (N.D. Ohio May 13, 2026); *see Paradinovich*, 2021 WL 5994043, at *8 (affirming ALJ's supportability finding where treatment notes and clinical evidence contradicted source's opined functional restrictions).

The ALJ found the FCE unsupported by objective medical evidence because "[Claimant's] left foot drop was never diagnosed or supported by acceptable diagnostic techniques in the record, but rather, was referenced by the claimant's self-report in one office visit." (ECF No. 6, PageID #: 54–55). The ALJ noted that despite Ms. Smith's opinion that Claimant had "severe" balance issues and could only stand occasionally because of left foot drop, that diagnosis lacked support in the objective medical evidence. (ECF No. 6, PageID #: 54–55, 1745). The ALJ further found that "[t]he reduced ability to lift with the left upper extremity is not supported by the symptoms reported, clinical findings, or the treatment record, as of year-end." (ECF No. 6, PageID #: 54–55). Thus, the ALJ's analysis satisfies the supportability factor.

### b. Consistency

The consistency factor requires the ALJ to consider the degree to which a medical opinion is consistent with evidence from other medical and nonmedical sources in the claim. *See* 20 C.F.R.

§ 404.1520c(c)(2). An ALJ satisfies this factor by providing "a logical bridge between his conclusions, the provider's evidence, and evidence in the record." *Solomon*, 2026 WL 1336228, at *10; *see also Paradinovich*, 2021 WL 5994043, at *8 (affirming where ALJ found opinion inconsistent with claimant's activities and treatment records).

The ALJ found the FCE inconsistent with Claimant's medical record as a whole. (ECF No. 6, PageID #: 54–55). Following his June 22, 2023, right elbow surgery, an August 16, 2023, follow-up noted "very mild pain in the right elbow and wrist," with pain rated one out of ten. (ECF No. 6, PageID #: 49, 1152). At that same visit, Claimant self-reported that he "had not fallen more than once in the past year," contradicting the FCE's claim of "severe" balance issues requiring assistance to walk. (ECF No. 6, PageID #: 49, 1152). Additionally, a July 5, 2023, occupational therapy evaluation found Claimant "independent in his ability to feed himself and perform light cooking with assistance from his wife and children." (ECF No. 6, PageID #: 49, 1170). Treatment notes from the same period reflected Claimant doing "fairly well overall," with sutures "removed without issue" and incisions "healing nicely without concerns." (ECF No. 6, PageID #: 49, 1178). And the ALJ found that "physical examinations consistently indicate the claimant is able to walk without assistance," further contradicting the FCE's severe balance findings. (ECF No. 6, PageID #: 55).

Claimant contends that the ALJ dismissed the FCE solely because Ms. Smith is not an acceptable medical source. But this argument mischaracterizes the ALJ's analysis. While the ALJ did note that Ms. Smith is not an acceptable medical source, the ALJ provided three other reasons for rejecting the FCE. (ECF No. 6, PageID #: 54–55). The remaining reasons addressed the FCE's lack of diagnostic support for left foot drop, its inconsistency with physical examinations showing ambulation without assistance, and the absence of record support for its lifting restrictions. (ECF

No. 6, PageID #: 54–55). Each of these reasons speaks directly to the supportability and consistency factors under § 404.1520c(c)(1)–(2). *See Fair v. Comm'r of Soc. Sec. Admin.,* No., 2022 WL 1802977, at *5–6 (N.D. Ohio June 2, 2022) (holding ALJ "appropriately discussed the supportability and consistency of the FCE" where the ALJ discounted the FCE based on limitations in the evaluation and inconsistencies with other medical evidence); *see also Solomon*, 2026 WL 1336228, at *10 (ALJ satisfied supportability factor by "cit[ing] to record evidence" contradicting source's opinion).

Moreover, the ALJ is "tasked with interpreting medical opinions in light of the totality of the evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 Fed. Appx. 555, 564 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(b)). And it is within the ALJ's discretion to weigh the record physician opinions. *See* 42 U.S.C. § 405(g); *see also Cutlip v. Sec'y of Health Hum. Servs.,* 25 F.3d 284, 287 (6th Cir. 1994). And if this analysis is supported by substantial evidence, this Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Harris v. Comm'r of Soc. Sec.*, 2021 WL 3615721, at *8 (S.D. Ohio Aug. 16, 2021) (affirming ALJ decision where "the ALJ's discussion of the supportability and consistency factors satisfied the articulation requirements" and "the ALJ's supportability and consistency analysis was supported by substantial evidence"). In the instant case, the ALJ provided a logical bridge between the FCE, the medical evidence, and his conclusion that the FCE was inconsistent with the record as a whole. Therefore, this Court will not disturb the ALJ's findings regarding the FCE.

**c.** **The ALJ's Failure to Consider Dr. Crombie's Co-Signature is Harmless Error.**

Claimant raises two additional challenges to the ALJ's evaluation of the opinion evidence,

10

and both arguments do not prevail. First, Claimant contends that the ALJ's failure to acknowledge Dr. Crombie's co-signature requires remand as the ALJ is required to discuss all medical opinions. (ECF No. 9, PageID #: 8–9). Second, Claimant argues that harmless error cannot excuse the ALJ's failure to acknowledge Dr. Crombie's co-signature pursuant to the Sixth Circuit's holding in *Hargett v. Comm'r of Soc. Sec.* 964 F.3d at 546, 553. (ECF No. 12, PageID #: 1853). In *Harget,* the Sixth Circuit held that when an FCE prepared by a physical therapist is reviewed and co-signed by a treating physician, that FCE must be considered as an opinion of the treating physician even when the non-treating source who prepared the FCE is not part of the same treatment team. *See id*. at 553 (noting that treating physician referred plaintiff for FCE and signed off on the FCE results, and holding that under those circumstances, "the ALJ should have considered the FCE as a treating-source opinion."). The *Hargett* court remanded because the ALJ had rejected the FCE primarily because it "was not based on a treating relationship" (despite being co-signed by a treating source) and provided only "bare, conclusory statements" for rejecting the FCE's limitations. *Id.* at 553-54. Klusmann relies on a few lines from *Hargett*, "[g]iven that the FCE in this case is a treating-source opinion, the ALJ's decision fails to provide good reasons for the weight given to it." *Hargett*, 964 F.3d at 553. However, *Hargett* is not applicable to this case as the court applied the pre-2017 "treating physician rule," which required an ALJ to assign controlling weight to treating source opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2).

Because Claimant filed his claim in July 2023, the post-2017 framework under § 404.1520c applies. (ECF No. 6, PageID #: 41). And under the current opinion regulations, the ALJ is only required to explain how he considered the factors of supportability and consistency of

a medical source's opinion "which are the two most important factors." *See* 20 C.F.R. §§ 404.1513a(b)(1)-(b)(2), 404.1520c. Unlike in *Hargett*, here the ALJ's decision contained more than "bare, conclusory statements" for rejecting the FCE. As detailed above, the ALJ adhered to the regulations in his discussion of the FCE by addressing both the supportability and consistency of the FCE, including the FCE's lack of consistency with physical examinations, symptoms reported, clinical findings, and the treatment record. *See* § 404.1520c(b)(2); (ECF No. 6, PageID #: 54–55); *see also* Lambert *v. Commr. of Social Sec.*, 2021 WL 2373666 (S.D. Ohio June 10, 2021), *report and recommendation adopted,* 2022 WL 336405 (S.D. Ohio Feb. 4, 2022) (rejecting Plaintiff's application of Hargrett and finding harmless error where the ALJ provided more than "bare, conclusory statements'" for rejecting the opinions contained in the FCE, explaining precisely why the FCE opinions were not well supported but instead were 'inconsistent with the record as a whole, including the examination findings and the claimant's own reports of functioning…as well as [the PT's] own findings.'). Accordingly, the Court finds the ALJ's analysis of the FCE is harmless error.

   **2.  The ALJ's Conclusion at Step Five is not Supported by Substantial Evidence.**

   Claimant also argues that the ALJ erred at Step Five by finding that significant jobs exist in the national economy that Klusmann can perform. (ECF No. 9, at 9–12). Specifically, Claimant contends that the VE's cross-examination testimony eliminated all available occupations because the training and probationary periods for those occupations would require more than occasional contact with coworkers and supervisors. (ECF No. 9, at 9). The Commissioner responds that substantial evidence supports the ALJ's Step Five finding. (ECF No. 11, at 4–7).

   At step five, the burden shifts to the Commissioner to show "that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th

12

Cir. 1999). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id.* If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *See Ealy v. Comm'r of Soc. Sec*, 594 F.3d 504, 516-17 (6th Cir. 2010). When substantial evidence supports the ALJ's finding, it must be affirmed "even if there is substantial evidence that would have supported an opposite conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

Here, the RFC determined by the ALJ limits Claimant to light work with "occasional interaction with co-workers and supervisors and no interaction with the public." (ECF No. 6, PageID #: 47). The ALJ then found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (ECF No. 6, PageID #: 56). At the hearing, the ALJ asked the VE to consider an individual with Claimant's vocational profile and the following limitations:

> [P]lease assume an individual of our Claimant's age, education, and work history. Please further assume that the individual could perform work at the light exertional level. There should be no climbing of ladders, ropes, or scaffolds, and no work around hazards such as unprotected heights, or unguarded moving machinery. There should be no commercial driving. There could be occasional crawling and climbing of ramps and stairs. Frequent, but not constant, reaching and handling with the right dominant upper extremity. The individual would be able to understand, remember, and carry out simple instructions and tasks. They can have frequent interaction with coworkers and supervisors, and occasional interaction with the public. There should be no production rate work such as on an assembly line, and . . . occasional changes in the workplace setting.

(ECF No.  6, PageID #: 85–86). The VE found that an individual with these limitations could perform work as a housekeeping cleaner (190,000 jobs), marker (167,000 jobs), and routing clerk

13

(122,000 jobs). (ECF No. 6, PageID #: 86). The ALJ then modified the hypothetical to include jobs that may accommodate occasional interactions with coworkers/supervisors and to eliminate interaction with the public. (ECF No. 6, PageID #: 86). The VE testified that this modification eliminated the housekeeping cleaner job but identified the router position (26,000 jobs) as an alternative. Thus, the VE found that an individual with Claimant's characteristics could perform 315,000 jobs in the national economy, such as marker, routing clerk, and router positions. (ECF No. 6, PageID #: 86–87).

On cross-examination, Klusmann's attorney questioned the VE regarding training requirements for the identified positions:

> Q … Let me ask you regarding initial hire. So a person initially hired, these SVP 1, SVP 2 jobs that would fit the hypotheticals posed, is there going to be like a probationary period?
>
> A Normally, yes.
>
> Q … Regarding these jobs that were listed for training purposes, I know you indicated we have a probationary period of one month, that lines up usually with about SVP 2, skilled, light learning, is - I guess, in your opinion, is that about the same time for training for the jobs that you listed?
>
> A Yes, I'd say so.
>
> Q Okay. And I should actually broaden this and just say, for any other job that would fit any of the hypotheticals, same thing, about 30 days for training purposes?
>
> A That would be correct.
>
> Q Okay. Now, just for my understanding for some of these jobs for contact purposes, I assume they're going to be trained by coworkers and supervisors. Is that what you see in the workforce currently?
>
> A Yes.
>
> Q Okay. would you agree then, especially when you're talking about some of these hypotheticals, or these jobs that -- for training purposes, they're going to have a lot of contact with coworkers and supervisors for a period of time, *probably more than occasional. Maybe more than frequent*, but then, pretty early on, they're going to

have to be doing this by themselves, and not having that job post type situation. Is that fair to say?

A Yes.

(ECF No. 6, PageID #: 89–91) (emphasis added). Claimant concludes that, based on this testimony, he could not perform the jobs the vocational expert identified because "the most he can do is occasional contact with others." (ECF No. 9, at 10). The Commissioner argues that Klusmann's attorney posed a "convoluted, compound question, full of hedges." (ECF No. 11, at 5). And "assuming [the VE] agreed with every premise in the question, that would amount only to: (1) For "some of … these jobs," (2) there would be "probably more than occasional" contact with coworkers and supervisors ("for [an undefined] period of time"), but (3) "pretty early on, they're going to have to be doing this by themselves." (*Id.*).

However, the ALJ's conclusion at Step Five ignores the conflict between Klusmann's limitation to occasional interaction with supervisors/coworkers and the VE's agreement that during the approximately thirty-day training period, some of the identified jobs would probably require more than occasional interaction and maybe more than frequent interaction before the employee could work independently. (ECF No. 6, PageID #: 89–91). Courts in the Northern District of Ohio district have found where a VE's testimony creates a conflict between an occasional interaction limitation and a required training period, and the ALJ does not evaluate the conflict, the conflict necessitates remand. *See McDonald v. Commr. of Social Sec.*, 2026 WL 1694008 (N.D. Ohio June 11, 2026), report *and recommendation adopted*, 2026 WL 2020215 (N.D. Ohio July 13, 2026); *Follen v. Commr. of Social Sec.*, 2026 WL 1382438 (N.D. Ohio May 18, 2026). In *Follen*, the court reasoned:

> The ALJ's conclusion at Step Five is not supported by substantial evidence because it ignores the conflict between Ms. Follen's limitation to occasional interaction with others and the VE's testimony that unskilled occupations require a two-to-three-

15

week training period during which she would have more than occasional interaction interactions with coworkers and supervisors. Though the VE did not testify that a hypothetical individual subject to that limitation could not complete the training period or would be precluded from work if the individual could not complete it, the VE's testimony that a training period typically involves more frequent interaction with others than actually performing the job, the conflict remains. "The ability to complete a training period or probationary period is...tantamount to the ability to keep a job, and as multiple circuits have recognized, the ability to keep a job is a necessary prerequisite to the ability to engage in substantial gainful activity." *Loy v. Comm'r of Soc. Sec.*, No. 5:24-cv-2239, 2025 WL 2611407, at *6 (N.D. Ohio Sept. 10, 2025) (quotation omitted), *report and recommendation adopted*, 2025 WL 3229608 (N.D. Ohio Nov. 18, 2025).

*Follen*, 2026 WL 1382438, at *4.

And in *McDonald*, the VE's testimony created an analogous inconsistency not evaluated by the ALJ,

Here, the ALJ determined McDonald is limited to occasional interaction with coworkers and supervisors. (Tr. 20.) At the hearing, the VE testified that an individual subject to the restrictions the ALJ ultimately included in the RFC can perform work in three unskilled positions: cleaner/housekeeper, inspector/hand packager, and merchandise marker. (*Id.* at 56.) On cross examination, the VE testified that employees in unskilled occupations are trained for two weeks to 30 days, during which they may have more frequent interaction with supervisors. (*Id.* at 58-60.) The VE explained that some positions, like inspector, require only a short demonstration for training. (*Id.* at 59.) The ALJ relied on the VE's testimony that a claimant subject to the restrictions identified in the RFC could perform work as a housekeeping cleaner, inspector hand packager, and merchandise marker. (*Id.* at 25).

*McDonald*, 2026 WL 1694008, at *9.

Like the VE testimony in *Follen* and *McDonald*, the vocational expert was not asked, nor did he definitively state, that Klusmann could not perform any work or could not complete a thirty-day training period for the specific jobs he identified. (ECF No. 6, PageID #: 89–91). Nor did he say now much additional contact, and how often, Klusmann would be expected to experience during a training period. (*Id.*). Instead, the VE agreed that, during the approximately thirty-day training period, some of the identified jobs would probably require more

than occasional interaction and maybe more than frequent interaction before the employee could work independently. (*Id.*). The VE did not identify which occupations required this increased interaction, how much interaction would be required, how long it would last, or whether those temporary training requirements would eliminate any of the representative occupations. (*Id.*) Nor did the VE reduce the number of available jobs or amend his testimony that Claimant could perform the identified occupations. (*Id.*).

Moreover, the VE was not asked whether the hypothetical individual could complete the training period of the identified jobs given the training period requirement. (ECF No. 6, PageID #: 89–91); *see Pamela J. Follen v. Commissioner of Social Security*, 2026 WL 1382438, at *4 (N.D. Ohio May 18, 2026), citing *Kenneth P. v. Saul*, 2019 WL 6463449, at *6 (S.D. Ind. Dec. 2, 2019) (reversing the ALJ's decision due to an error at Step Five because "absent from the VE's testimony is any explicit reconsideration of the hypothetical claimant's ability to perform the representative jobs after the issues of instruction and the probationary period were raised"). Similar to *McDonald*, the ALJ did not provide any explanation of the conflict between Klusmann's limitation to occasional interaction with co-workers/supervisors and the VE's testimony in his written decision. *McDonald*, 2026 WL 1694008, at *9. Therefore, the ALJ did not evaluate the conflict between Klusmann's limitation to occasional interaction with supervisors and coworkers and the VE's testimony regarding increased interaction during the thirty-day training period. This Court cannot build a logical bridge between the evidence and the resulting RFC concerning the occasional interactions limitation. And courts cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307

(7th Cir. 1996)).

Furthermore, the RFC is "the most [an individual] can still do despite [her] limitations. 20 C.F.R. § 404.1545. The ALJ determined that Klusmann can, at most, interact occasionally with co-workers/supervisors and gave no indication that he can interact with others more frequently to complete the training period. Because the ALJ neither addressed whether the increase in interaction during training period was consistent with the RFC nor explained whether the identified jobs remained available despite that testimony, the Court cannot conduct meaningful judicial review of the Step Five determination. Therefore, this Court finds the Commissioner has not met its burden at Step Five to show Klusmann can perform other work in the national economy. Thus, the decision of the Commissioner must be reversed.

3. **Remand for further consideration of the unresolved vocational issues regarding the probationary period is the Appropriate Remedy.**

After finding error at Step Five, the Court must decide whether to remand the case for further proceedings or for an award of benefits. Although Claimant argues that immediate reward is the appropriate outcome in this decision, "… the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secy. of Health & Human Services*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir.1990); (ECF No. 12, at 4–6).

Klusmann relies upon several cases from outside of the Northern District of Ohio that have found the immediate award of benefits appropriate. (ECF No. 9, at 12, 13) (ECF No. 12, at 5–6); *See McLaughlin v. Comm'r of Soc. Sec.*, 2019 WL 125761, at *3 (S.D. Ohio Jan. 8, 2019) (awarding benefits where "the VE testified that a person who could not participate in those tasks— *i.e.*, could not engage in teamwork or shared tasks—would not be able to 'weather the probationary

period of these [identified] unskilled jobs' "), *report and recommendation adopted*, 2019 WL 1902749 (S.D. Ohio Apr. 29, 2019); *McAfee v. Comm'r of Soc. Sec.*, 2020 WL 5 810004 (S.D. Ohio Sept. 30, 2020) (awarding benefits where the VE expressly testified that plaintiff's RFC precluded completing the probationary period): *Matthew H. v. Comm'r of Soc. Sec.*, 2022 WL 2255376 (S.D. Ohio June 23, 2022) (awarding benefits where the court determined the VE's testimony established that "the jobs identified by the vocational expert would not be available to a claimant who, like Plaintiff, cannot be subjected to over the shoulder supervision.").

Yet "[t]he Northern District of Ohio has found that awarding benefits is not appropriate where the VE testimony is silent on whether the occupations identified exceed the plaintiff's RFC." *Medhurst v. Commr. of Social Sec.*, 2026 WL 1758257, at *5 (N.D. Ohio June 18, 2026); *See also Bassett v. Comm'r of Soc. Sec.*, 2025 WL 798791 at *6 (N.D. Ohio Mar. 13, 2025), *report and recommendation adopted*, 2025 WL 1068013 (N.D. Ohio Apr. 9, 2025) (denying the award of benefits where the VE was not asked "if a person with the limitations described could 'weather the probationary period,' or language to that effect, of the three identified jobs"); *Loy*, 2025 WL 2611407 at *8 (denying the award of benefits because the VE testified that the length of training periods vary by employer and "did not testify about the length of training periods for the cleaner/housekeeping, routing clerk, and marker jobs"); *Owens v. Comm'r of Soc. Sec.*, 2024 WL 553954 at *5 (N.D. Ohio Jan. 5, 2024) (denying the award of benefits because "the vocational expert testified generally about unskilled jobs and not the probationary periods for the jobs gluer, garment folder, and inspector and hand packager"); *Follen*, 2026 WL 1382438 at *6 (denying the award of benefits because "the VE did not testify whether the particular jobs she identified (merchandise marker, routing clerk, cleaner/housekeeper) have required training periods, if their training periods are shorter than the general 'two to three weeks max,' or, most

19

critically, if a person limited to occasional interactions with others could make it through those training periods").

As discussed above, the vocational expert was not asked, nor did he definitively state, that Klusmann could not perform any work or could not complete a thirty-day training period for the specific jobs he identified. (ECF No. 6, PageID #: 89–91). Klusmann has not identified any basis for this Court to depart from precedent in the Northern District of Ohio. Accordingly, consistent with that precedent, the Court finds that unresolved factual issues remain in the record and remands this case for further administrative proceedings, including a hearing to resolve the contradiction in the record administrative proceedings, including a hearing to resolve the contradiction in the record.

## VI. Conclusion

Based on the foregoing, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: July 29, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE